1852, Estate of Russell Frost v. Kuvjet Turk. Good morning, your honors. May it please the court. Bill Bosch on behalf of the Movement Appellees, all of whom are judgment creditors seeking turnover under the TRIA statute. This interlocutory appeal fails on jurisdictional grounds. The order under review is not an injunction under section 1292a1, but rather Judge Preska's order denying the defendant's motion to vacate a restraining notice under article 52 of the New York civil practice law and rules. And that matters because article 52 is a legislatively enacted statutory enforcement mechanism. It creates the restraining notice and it assigns hardship review to the district court by statute, not equity. At bottom, the appellants are asking this court to treat a supervised statutory preservation device as if it were a freestanding equitable injunction. That would erase a line this court has drawn for nearly 40 years and would invite interlocutory appeals from every article 52 preservation notice. The principle distinguishing between statutory enforcement mechanisms and equitable injunctions, which is covered by section 1292a1, dates back to Korea shipping and has been applied since then in both the Prevezon and We Build the Wall matters to dismiss interlocutory appeals from statutory restraints, even where those restraints have real economic consequences. Now, Judge Preska, let me just, could make Turks, I'm sorry, appellants cases do not change that analysis. None of the cases that they cite address the statutory equitable distinction. So instead, they turn to arguing the merits. And even then they don't accurately state Judge Preska's preliminary findings on the likelihood of success with respect to the agency or instrumentality issue. Can I ask just a background question to make sure I understand, because I wasn't sure from your brief. The order you understand being appealed is the section 5222 restraining notice? Or is it the district court's 5240 order, which extends the restraining notice? I think your brief talks about it as 5222. I'm not sure it makes a difference, but tell me which it is and whether it does make a difference. I don't think it makes a difference. Well, which is it? Let's start with that. They're appealing from the order, denying their motion to vacate the restraining notice, which is within the court's authority under the statute. Under 5224. I mean, the restraining notice itself would have expired, right? More than a year passed. It would have expired. So that's the 5240 order. So the practical effect. I agree. The practical effect is in essence allowing the extension. It's the 5240 order that extends the restraining notice. Does that matter for your analysis? I don't think it matters, because both are the statutory implementation authorized by the legislature. And that's why COREA, PREVAZON, and We Build the Wall all matter. And that's where a legislatively enacted pre-enforcement mechanism, and in this case where the judge has oversight. And in fact, here, Judge Preska has retained oversight following factual findings, evidentiary hearings, and said that this restraining notice will be revisited at the close of discovery in April. So this is not a situation where there is any irreparable harm or serious consequence. So even if you're applying a practical effect analysis to get around the distinction between statutory and equitable injunctions, no property has been taken, no funds have been transferred, any delay is compensable through statutory interest, and Judge Preska continues to actively supervise any hardship that may be argued. Freezing $300 million is a lot. I don't know if there's a dollar threshold, but it's, I mean, it seems like there's a case that could be made for being, I don't know if it's irreparable, but serious harm from the loss of access to those funds, however you phrase it, business opportunities or whatever. What do you need exactly in terms of financial impact? So, Your Honor, actually there's no case in which the Carson factors, to my understanding, have ever been expressly applied in the context of a statutory enforcement mechanism like this. But if they did, the question then would be serious consequence or irreparable injury of the kind that could destroy the business. And in this instance, the record shows just the opposite. For nearly two years, the appellant has continued operating in the United States, they've met all their obligations, they maintain multiple U.S. correspondent accounts, and their own witnesses conceded that there have been, there's been no operational harm. The one thing that hasn't yet been destroyed, it's managed to survive, doesn't I don't think necessarily prove your point that it's not a serious harm that could be irreparable. And that's why the legislature, in its judgment, gave hardship review authority to the district court. And coming back to the Korea shipping case, with this, when it's cited by the appellants in the brief, they left off the next sentence, which said, where Congress has itself balanced the competing considerations and provided by statute for preliminary relief, the check of an automatic interlocutory appeal is not necessary. Here, the legislature balanced the harms, balanced the risks, invested in the district court, the authority to do hardship review, given the nature of this pre-execution preliminary restraint. So Judge Presco retains that authority. If the circumstances were to change, for example, when the judge said, come the close of discovery in April, if there's any change in circumstances, they're free to go back to her and seek relief, which is the basis for their due process. There is no interlocutory appeal by statute. And that's the long line of cases. You don't think we do serious or even irreparable harm analysis at all? I think there can be a circumstance. Again, on the showing of serious or irreparable consequence, my view is that the court always retains some authority. The one case they cite that comes close is EM, EM limited. But the court there, that came after Korea, but the court did not retain any discussion or consideration of this statutory equitable distinction. It didn't even address Carson, although it appeared to apply the Carson factors. Can I just go back on this point to my original question to see if it does affect the analysis? 5222, I think, would clearly fall within the statutory line, the flow chart that you're drawing. The 5240 is conferring equitable powers on courts. It speaks specifically in equity. Does that matter? Trebizond and We Build the Wall would say no. Those are situations where the statute, which applied to forfeiture cases, provided not only for restraining notices, but also for injunctions. And this court consistently has said, even though you label it an injunction, because it's a statutory enforcement mechanism, it doesn't fall within the narrow jurisdiction granted by 1292A1 for equitable injunctions. So even where the judge is exercising some judgment, that's the protection they're given, not interlocutory appeal. If we think there's tension between Trebizond and Korea shipping, I mean, it's pretty clear what we should do, right? We follow the opinion, not the summary order. I don't think there is tension between Korea shipping and Trebizond. Okay. Can you explain? So Korea shipping established this clear line between statutory enforcement mechanisms and equitable jurisdiction, where the court is purely exercising the equitable authority to balance the hardships, not where the judge invested with statutory discretion to enforce the legislature's judgment that a restraining notice may be issued. Remember, Article 52 says that the attorney that issues the restraining notice essentially is, as an officer of the court, representing that there is a basis for restraining these assets because they belong to the judgment debtor. And so in this instance, Judge Preska's order, coming back to Judge Nathan's question, Judge Preska dealt with whether there was sufficient evidence to substantiate that there was a connection between the assets being restrained and the defendant or appellants, were they an agent or instrumentality. And I don't want to get too far into the merits, but what she found was that the specific account that was restrained was used by the judgment debtor. And so she found that there was a basis for the restraining notice under Article 52 without having to balance the hardships, although she did not note that the defendants had not met their burden, that they hadn't introduced any evidence to substantiate their assertion that their bank was going to fail. There might be, coming back to your question, Judge Park, there may be circumstances again where this court may make it clear that the Carson factors apply notwithstanding the statutory equity jurisdiction. This is not that case. Okay. Thank you, counsel. Mr. Pincus. Good morning, Your Honor. May it please the court. Andrew Pincus for Appellant Kuve Turk. I think the sort of starting point here was laid out by Chief, then Chief Judge of granting injunctive relief if it's directed to a party, enforceable by contempt, designed to accord or protect the relief sought, and the appealing party demonstrates serious, perhaps irreparable consequences. So we think that Judge Preska's order under 5240 meets all of those requirements. The question, as my friend said, is does Korea shipping apply? And Korea shipping we think is a pretty narrow exception. What the court said there is that Congress has balanced the completing considerations and provided for preliminary relief. And the statute there was pretty clear. It said for withdrawal in the case where the pension fund is contesting withdrawal liability, the amount shall be payable notwithstanding any request for review of appeal of determination. So Congress there made a pretty flat determination about what the interim rule was going to be. To the extent this court has extended that rule to the forfeiture context, those statutes also have very complicated procedural standards, substantive standards and procedural rules for when a forfeiture can take place pending the court's ultimate judgment. 18 U.S.C. 983 sets forth a whole bunch of steps that have to be tested, and the other statutes that have been cited in this court's forfeiture cases, 21 U.S.C. 853 and 28 U.S.C. 2461 also are quite specific. As Your Honor mentioned, here Judge Preska's order relies on 5240, which is a grant of discretion. It's really no different than Rule 65 in terms of giving the district court equitable discretion. But so you're in the practical effect category, so even assuming we agree with you on that, how do you make out the harm showing given that what we're talking about is loss of opportunity for, there's no possibility of dissipation of the funds, you haven't made any allegations of bankruptcy or anything like that, so why can't just be repaired at the end of the day through some form of damages if that can be established on lost interest? Two answers to that. I think my friend is applying the wrong test. The threatened to destroy the entity test is a test for the collateral order doctrine. It's not the test under Carson. Carson is serious, perhaps irreparable consequences. That's a lower standard. And we think locking up $270 million for already been two and a quarter years and the district court's recent orders, I point the court to docket 293, extends discovery until May, provides for additional discovery, expert discovery perhaps, we want to get discovery of the anonymous witness, all of that will be decided afterwards, then presumably there will be an hearing. So you concede it's not irreparable, your argument is that it's something less than therefore serious, right? I think it may be irreparable in this context because there's no indication that the individuals here have the money to pay the damages. There's no bond posted, you know, 5222 is different than attachment and the critical difference is they don't have to show that there would be some inability to pay or is it their obligation to establish that there would be inability to pay? Well, I think the court can take judicial notice here that there's a serious amount of money for a long period of time that involves not just interest, but the need for the bank to raise additional capital to replace the capital that's lost. So we think that that's clear and courts that have applied Carson have not looked for specific evidence in the record. The court didn't look at that in the EM case or the Aurelius case, which involved 5222 restraining notices. Other courts that have applied that have found orders appealable under 1292A1 have not looked for specific showings. They basically said if it's a serious amount of money for a period of time, that's enough of a showing to satisfy the serious, perhaps irreparable standard that Carson laid out. No, but in the context of other facts, like a showing, I think, of inability to pay. The courts have not, those courts have not... So what's your best case in our circuit, start with that, for that proposition? I think EM limited is a case here. I think Klippisch is another case that involved a serious, in which that case, and in cases in other circuits that we cite, Centurion in the Seventh Circuit, FDIC versus Spell, and Mitsubishi. And if the missing link here is that we have to show that the plaintiffs here are not going to be able to pay the pretty substantial amount of money, we can certainly do that on remand. I don't think that's going to be a very difficult showing to make. My friend made some comments about the merits, just to answer those. Whether or not, under 5222, it's clear that it's improper for the restraining notice to continue without a showing of a substantial likelihood of success. There's a threshold issue here, which is it's improper even to use a restraining notice unless the property targeted is the property of the JSC case. Went into this in pretty substantial detail. At 295 F sub second, at 392 to 3, he said it's not available for an alter ego claim. So there's a threshold problem here, which is 5222 doesn't even apply, because this is not the property of the judgment debtor. Even if we're wrong about that, there's another question, which is, was there a substantial likelihood of success shown under TRIA? That requires blocking. The assets have to be blocked, and there has to be an agency or instrumentality. And this court's decision, recent decision, the Doe case says the assets can be blocked and unblocked. So the court's very tentative finding about what might have happened in 2021 is undercut by its finding that in 2023, the bank wasn't an agency instrumentality. So at 2023, the assets weren't blocked anymore. And so based on the court's logic, the order is improper. If I could just go back briefly to your argument on harm. I think your brief was focused on sort of what I read to be the dollar rounds, hundreds of millions of dollars, and sort of a general lost business opportunities. It sounds like you're also making an argument that it's unlikely that you'll be able to recover it given the financial stakes and the plaintiff's ability to pay. Is that in the papers? Yes, I think we're saying both things to the extent there's a question about recovery and whether it has to be irreparable. The court said serious or irreparable. So we think it's serious. But we also think if it has to be, if there has to be a showing that it's not recoverable, we also meet that standard. And the business opportunities thing, though, I mean, it was somewhat vague. Is there anything specific that you can point to? I think the reality is that for any entity putting 270 million dollars, the way correspondent accounts work is the bank has to be able to use them for transactions into and out of dollars. So it has to have money in the account. If this money is frozen, that means it has to raise more money to have in its other correspondent accounts in order to be able to provide the important services that it provides to its customers. Okay. Thank you, counsel. Thank you. Thank you both. We'll take the matter under